**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

MARY R.,[1]

      Plaintiff,

          v.                              CIVIL NO. 3:19cv903

ANDREW M. SAUL,
Commissioner of Social Security,

      Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for supplemental security income under the Social Security Act. Mary R. ("Plaintiff"), thirty-one years old at the time of her benefits application, last worked over ten years ago as a part-time cashier. (R. at 20, 41.)

On April 12, 2017, Plaintiff applied for supplemental security income, alleging disability due to mental impairments including borderline personality disorder, generalized anxiety disorder, and dysthymia persistent depressive disorder. (R. at 10.) After Plaintiff's application was denied, and after exhausting her administrative remedies, Plaintiff seeks review of the Administrative Law Judge's ("ALJ") decision. This matter now comes before the Court for a Report and

---

[1]     The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

1

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross motions for summary judgment, rendering the matter ripe for review.[2]

Plaintiff argues that the ALJ erred in her finding that Plaintiff is "not disabled." Plaintiff contends that although she alleged disability based only on mental impairments, the ALJ erred by failing to properly consider her knee and hip impairments and applying the wrong legal standards to evaluate Plaintiff's subjective complaints of pain. (Pl.'s Brief in Support of Pl.'s Mot. For Summ. J. at 5-15, ECF No. 15 ("Pl.'s Mem.").) Regarding Plaintiff's mental impairments, Plaintiff asserts the ALJ erred by failing to properly evaluate the medical opinions of Dr. Cousins and Dr. Houchin.

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 13) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 18) be GRANTED and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On April 12, 2017, Plaintiff filed for supplemental security income, alleging disability due to borderline personality disorder, generalized anxiety disorder, and dysthymia persistent depressive disorder, with an alleged onset date of February 1, 2012. (R. at 58-59.) The Social Security Administration denied Plaintiff's claim initially on June 12, 2017, and again upon reconsideration on January 11, 2018. (R. at 10.) Plaintiff requested a hearing before an ALJ, and the hearing was held on November 28, 2018. (R. at 10, 34, 103.) On January 11, 2019, the ALJ

---

[2]  The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

issued a written opinion, denying Plaintiff's claim and concluding that Plaintiff did not qualify as disabled under the Social Security Act. (R. at 10-21.) On January 11, 2019, Plaintiff requested review of the ALJ's decision, and on November 18, 2019, the Social Security Administration Appeals Council denied this request, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1-6.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 266 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (alteration in original) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the ALJ based on the record as a whole, the court must take

into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If substantial evidence in the record supports the ALJ's findings as to any fact, it is binding on the reviewing court regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *See id.*

Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. § 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. § 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

On November 28, 2018, the ALJ held a hearing during which Plaintiff, represented by counsel, and a vocational expert testified. (R. at 34-57.) On January 11, 2019, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled. (R. at 10-21.)

The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 10-21.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of April 12, 2017. (R. at 12.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: small inferior heel spurs/Achilles tendinitis, small labral tear of the right hip, asthma, obstructive sleep apnea, obesity, major depressive disorder, social anxiety disorder, panic disorder, and borderline personality disorder. (R. at 12-13.) At step three, the ALJ determined that none of these impairments, individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13-15.)

After step three, the ALJ determined Plaintiff's residual functional capacity based on an evaluation of the evidence, including Plaintiff's testimony and the findings of treating and examining health care providers. (R. at 15-20.) Based on this evidence, the ALJ determined that Plaintiff retained the ability to perform light work with the following limitations: she could occasionally climb stairs and ramps, balance stoop, kneel, crouch, and crawl, and could have occasional exposure to respiratory irritants and workplace hazards. (R. at 15.) The ALJ also directed that Plaintiff could never use ladders, ropes, or scaffolds, and could never have exposure to unprotected heights. (R. at 15.) Finally, the ALJ determined Plaintiff could perform tasks with ordinary breaks in a static work environment, where she would not need to frequently change tasks,

would not have any direct or indirect contact with the general public, and would not have tandem work assignments. (R. at 15.)

At step four, the ALJ found that Plaintiff had no past relevant work. (R. at 20.) At step five, the ALJ determined that Plaintiff's age, education, work experience, and residual functional capacity allowed her to perform jobs existing in significant numbers in the national economy, including work as a routing clerk, marker, or router. (R. at 20-21.) The ALJ, therefore, concluded that a finding of "not disabled" was appropriate. (R. at 21.)

## IV. ANALYSIS

Plaintiff's appeal to this court raises several challenges to the ALJ's opinion. Plaintiff alleges that the ALJ erred by: (1) failing to consider Plaintiff's knee impairment; (2) failing to properly assess Plaintiff's hip impairment; (3) improperly evaluating the opinion of Dr. Cousins (4) improperly evaluating the opinion of Dr. Houchin; and (5) using an incorrect legal standard to assess Plaintiff's subjective complaints. (Pl.'s Mem. at 5-15.) For the reasons set forth below, the ALJ's decision does not require remand.

### A. The ALJ's Failure to Consider Plaintiff's Knee Condition is Harmless Error.

Plaintiff argues that the ALJ erred by failing to consider her knee condition in her written decision. (Pl.'s Mem. at 5-6.) Specifically, Plaintiff contends that the ALJ never discussed Plaintiff's knee condition, specifically by failing to determine whether it was a severe impairment at step two of the sequential evaluation and by failing to evaluate whether the knee condition required any residual functional capacity limitations. (Pl.'s Mem. at 5-6.) In response, Defendant contends that Plaintiff's knee impairment is not severe, and does not result in any functional limitations. (Def.'s Mot. Summ. J. & Br. in Supp. Thereof at 18-20, ECF No. 18 ("Def.'s Mem.").)

At step two, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that are severe. § 416.920(a)(4)(ii). An impairment is "not severe if it does not significantly limit [one's] physical or mental ability to do basic work activities," and when medical and other evidence establish only a slight abnormality or combination of abnormalities that would have no more than a limited effect on an individual's ability to work. § 416.922(a). It is the claimant's burden to demonstrate an impairment is severe. §§ 416.920(a)(4)(ii), 416.920(c). The ALJ errs if he or she "fails to evaluate a claimant's alleged impairment and make a threshold finding whether it is a medically determinable impairment." *Bonvillain v. Berryhill*, No. 1:18-cv-978 (TCB), 2019 WL 1232840, at *12 (E.D. Va. Mar. 15, 2019).

After determining whether Plaintiff's impairments or combination of impairments are severe enough to meet a listing at step three, the ALJ must determine the Plaintiff's residual functional capacity. §§ 416.920(e)-(f), 416.945(a)(1). Residual functional capacity "is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work." *Mascio*, 780 F.3d at 635 (quoting § 416.929(a)(1)). The residual functional capacity must incorporate impairments supported by objective medical evidence in the record and those impairments that are based on claimant's credible complaints. § 416.945(e). Moreover, the ALJ must consider all of the medical evidence in the record. *Craig*, 76 F.3d at 594-95; *see also* SSR 96-8p, 1996 WL 374184 (July 2, 1996) (stating that the "[residual functional capacity] assessment must be based on *all* of the relevant evidence in the case record" (emphasis added)). The limiting effect of an impairment must be considered as part of the residual functional capacity assessment, regardless of whether the impairment is classified as severe at step two of the sequential analysis. § 416.945(a)(2).

7

Here, Plaintiff did not allege disability based on any of her physical impairments in her application, let alone her knee condition, (R. at 58) and only a single medical record after the alleged onset date mentions any concern with knee pain. (R. at 440-42 (dated April 25, 2017).) However, Plaintiff did testify at the hearing regarding her knee pain, stating "[w]e do have stairs, which is a little bit hard. I have some problems with fibromyalgia and some problems with my knees and I have a tear in my hip, but it's painful sometimes, but not all the time." (R. at 40.) Additionally, Plaintiff's medical records before the alleged onset date note that she has "mild laterally tracking patella on the tight knee" (R. at 348), that her "bilateral patellae are eccentrically located" (R. at 451), and that she has "mild patellofemoral crepitus" in her knee (R. at 354-55). Plaintiff also received pain medication and injections to control her knee pain, and was referred to physical therapy. (R. at 354-55, 440-42.) Accordingly, because the ALJ received evidence on Plaintiff's knee condition, she was required to consider the condition at step two and in her subsequent analysis. *Coakley v. Colvin*, No. 8:15-cv-2788-MGL-JDA, 2016 WL 7364643, at *11 n.9 (D.S.C. Nov. 29, 2016) ("[A]n ALJ is required to consider any impairments a Plaintiff places on the application 'as well as any impairments about which he receives evidence.'") (quoting *Nicholson v. Comm'r*, 600 F. Supp. 2d 740, 756 (N.D.W. Va. Feb. 27, 2009)).

In reviewing the ALJ's opinion, it is clear that the ALJ did not explicitly discuss Plaintiff's knee condition at step two or later in her analysis. However, her analysis does address the pain resulting from Plaintiff's knee impairment and include limitations which address this impairment. First, the ALJ included a summary of Plaintiff's testimony in her opinion and noted that "it was sometimes painful for her to walk up the stairs to her apartment, and her pain could be triggered by cold weather or rain." (R. at 16.) Second, the ALJ adopted limitations suggested by Dr. R.D. Kadian, a state agency physician who completed a residual functional capacity assessment of

Plaintiff and specifically considered Plaintiff's knee impairment. (R. at 19). Dr. Kadian noted that Plaintiff "has morbid obesity with knee pain," and recommended Plaintiff has the residual functional capacity to perform "light work." (R. at 82.) The ALJ found Dr. Kadian's opinion "persuasive" and formulated a residual functional capacity that included light work. (R. at 15, 19.) Thus, although the ALJ failed to articulate his reasoning in regards to Plaintiff's knee condition, there is evidence that the ALJ did adequately consider the condition. The Court need not determine if the ALJ erred, however, if the error was nevertheless harmless. *See Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015) (analyzing whether the ALJ's error constituted harmless error).

In considering whether an error is harmless, the court must look to "the likelihood that the result would have been different" had the ALJ not erred. *Bisceglia v. Colvin*, 173 F. Supp. 3d 326, 333 (E.D. Va. 2016) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 411 (2009)). The burden of establishing a harmful error "rests on the party attacking the agency's determination." *Shinseki*, 556 U.S. at 409. It is well-established in the Fourth Circuit that an error at step two is harmless so long as the ALJ finds at least one severe impairment at step two and continues the analysis and considers an impairment's effects in subsequent steps of the sequential evaluation. *Leith v. Berryhill*, No. 1:16-cv-01565 (IDD), 2017 WL 6638916, at *8 (E.D. Va. Dec. 28, 2017); *Christian v. Colvin*, No. 4:15-cv-41, 2016 WL 4056210, at *9 (E.D. Va. May 6, 2016).

In this context, even if the ALJ erred by not discussing Plaintiff's knee impairment, the error was harmless and does not require remand. The ALJ here found at least one severe impairment at step two, continued her analysis, and considered the limiting effects of Plaintiff's knee condition in subsequent steps of the sequential evaluation. The ALJ explicitly considered that Plaintiff has pain when walking up the stairs to her apartment and adopted the residual functional capacity limitations opined by Dr. Kadian. (R. at 16, 19.) Moreover, Plaintiff has not identified

9

any additional residual functional capacity limitations that the ALJ should have adopted had she explicitly considered Plaintiff's knee impairment. (*See* Pl.'s Mem. at 5-6.) Absent any additional residual functional capacity limitations that Plaintiff's knee condition would have required, the ALJ's error was harmless.

Under these circumstances, Plaintiff does not meet her burden to establish any "likelihood that the result would have been different" had the ALJ explicitly considered her knee condition. *Bisceglia*, 173 F. Supp. 3d at 333. Accordingly, any error by the ALJ in failing to consider Plaintiff's knee condition was harmless and does not require remand.

**B. Any Failure by the ALJ to Properly Consider Plaintiff's Hip Impairment is Harmless.**

Next, Plaintiff argues that the ALJ erred by failing to properly assess Plaintiff's hip pain because the ALJ only addressed a labral tear at Plaintiff's right hip and did not also address Plaintiff's diagnosis of femoral acetabular impingement ("hip impingement"),[3] which also involved Plaintiff's right hip. (Pl.'s Mem. at 6-7.) Plaintiff contends that her hip impingement is a separate impairment that could have caused Plaintiff's hip pain, and therefore the ALJ should have addressed it. (Pl.'s Mem. at 6-7.) In response Defendant argues that the ALJ's consideration of Plaintiff's hip impairment was sufficient, and that Plaintiff's hip impingement did not warrant any functional limitations that the ALJ should have addressed. (Def.'s Mem. at 21.)

---

[3]     Femoral acetabular impingement is "a clinical syndrome in which the anatomic abnormalities of the femoral head and/or the acetabulum result in an abnormal contact between the two during hip motion, especially in positions of hip flexion and rotation, leading to cartilage and labral damage and hip pain." Stephanie Pun, M.D., et al., *Femoroacetabular Impingement*, National Center for Biotechnology Information, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC 4280287/ (last visited January 19, 2021).

An ALJ's failure to specifically identify an impairment as severe is harmless when the impairment is fully encompassed by a different impairment and its resulting symptoms. *See Diane S. P. v. Berryhill*, 379 F. Supp. 3d 498, 531 (E.D. Va. 2019) (finding any error by ALJ harmless because the ALJ's classification of one disorder as a severe impairment fully encompassed another impairment and its resulting symptoms), *report and recommendation adopted*, 379 F. Supp. 3d 498, 503 (E.D. Va. 2019).

Here, Plaintiff's medical records demonstrate that she was diagnosed with two conditions involving her right hip: a small labral tear and femoral acetabular impingement. (R. at 349, 352, 354.) Dr. Patel, who treated Plaintiff for her right hip impairment, noted that Plaintiff's MRI was "suggestive of having a small labral tear" and discussed with Plaintiff that her hip pain "*can* be from [hip impingement] from tight IT band versus from the to[r]n labrum." (R. at 354 (emphasis added).) Regardless of the cause, Dr. Patel "discussed treatment options" with Plaintiff "for the hip[.]" (R. at 354.) Though the ALJ did not specifically address Plaintiff's hip impingement diagnosis, she did classify the small labral tear in Plaintiff's right hip as severe, and thoroughly addressed that impairment in the residual functional capacity determination. (R. at 12, 17, 19, 20.)

Accordingly, even if the ALJ erred by failing to specifically mention Plaintiff's hip impingement, any error would be harmless because the same functional limitations were caused by the small labral tear and hip impingement. *See e.g.*, *Diane S. P.*, 379 F. Supp. 3d at 531. The ALJ classified Plaintiff's labral tear in her right hip as severe and incorporated any resulting functional limitations in Plaintiff's residual functional capacity. (R. at 20.) Plaintiff has not identified any additional functional limitations caused by her hip impingement diagnosis that would result in a change to her residual functional capacity other than those already identified by the ALJ. Therefore, remand is not warranted on this ground.

### C. The ALJ Properly Evaluated Dr. Cousins' Opinion, and Dr. Cousins' Opinion is Supported by Substantial Evidence.

Plaintiff argues that the ALJ erred by rejecting favorable parts of Dr. Christopher Cousins' opinion, and that the ALJ's reasons for rejecting parts of Dr. Cousins' opinion are "legally insufficient." (Pl.'s Mem. at 7-8.) Defendant responds that the ALJ properly considered Dr. Cousins' opinion in accordance with the new regulations promulgated in 2017 for evaluating opinions and that the ALJ's conclusions regarding Dr. Cousins' opinion are otherwise supported by substantial evidence. (Def.'s Mem. at 22-28.)

Under the regulations,[4] the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. 20 C.F.R. § 416.920c(a), (b), (c)(1)-(5). Supportability and consistency are the "most important" factors, and the ALJ must discuss how they considered these factors in the written opinion. § 416.920c(b)(2). Accordingly, for supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are," the "more persuasive the medical opinion[]" will be. § 416.920c(c)(2). Similarly, for consistency, "[t]he more consistent a medical opinion[]" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion[]" will be. § 416.920c(c)(2). The ALJ may explain their consideration of the other factors but is only required to do so when contrary medical opinions are equally persuasive in

---

[4]     Because Plaintiff filed her disability claim after March 27, 2017, Section 416.920c, which sets forth revised rules regarding the assessment of medical opinion evidence, applies here.

terms of both supportability and consistency. § 416.920c(b)(3). In that situation, the ALJ must then articulate the remaining factors and their application to the persuasiveness of the medical opinion. § 416.920c(b)(3).

    1.  <u>The ALJ Applied the Correct Legal Standards to Analyze Dr. Cousins' Report.</u>

Here, the ALJ found some portions of Dr. Cousins' opinion were persuasive, but others were not. In making this determination, the ALJ found that Dr. Cousins' opinion was "persuasive to limiting social interactions, but . . . the extreme limitations in interacting with others, to simple, repetitive work, in maintaining regular attendance, performing work activities, and completing a work day/week are not consistent with or supported by the evidence." (R. at 18.) The ALJ explained,

> [a]lthough the claimant was noted to be irritable, she generally had normal mental status examinations and was observed to be pleasant, cooperative, well-groomed, with good judgment and insight. She was able to spell "world" backwards and testified she helped her son with homework. Of note, none of her providers indicated the claimant was reticent to take direction/instructions during her appointments. Dr. Cousins did not have an ongoing treating relationship with the claimant, meeting her once for the purposes of a consultative examination, and noted during the examination that the claimant was cooperate, answered Dr. Cousins' questions, and had good eye contact.

(R. at 18-19.) The ALJ applied the correct legal standard, in that her opinion analyzed the consistency factor (R. at 18-19 (noting inconsistencies between Dr. Cousins' opinion and other evidence in the record such as Plaintiff's normal mental examinations)) and the supportability factor (R. at 18-19 (recognizing that Dr. Cousins' opinion was less supported because he found extreme limitations even though he observed Plaintiff to be cooperative with good eye contact)). Although not required, the ALJ also articulated his consideration of the relationship between Dr. Cousins and Plaintiff, and noted that Dr. Cousins only met Plaintiff once.

On the other hand, the ALJ also articulated reasons she found certain portions of Dr. Cousins' opinion persuasive, stating:

> I find the opinion the claimant would [] experience moderate difficulty coping with the typical stresses encountered in competitive work is persuasive as it is consistent with the claimant appearing sad, tearful, anxious, and fearful, and therefore she has been limited to work in a static work environment and no tandem work assignments.

(R. at 19.) The ALJ determined that Dr. Cousins' opinion that Plaintiff would experience moderate difficulty coping with stresses was both supported and consistent with the record. Accordingly, the ALJ applied the correct legal standards to evaluate Dr. Cousins' opinion.

2.   The ALJ's Evaluation of Dr. Cousins' Report is Supported by Substantial Evidence.

Plaintiff also argues that the ALJ's evaluation of Dr. Cousins' opinion is not supported by substantial evidence. Specifically, Plaintiff contends that the evidence cited by the ALJ did not "refute" Dr. Cousins' opinions that Plaintiff should be limited to simple and repetitive work and that she would have difficulty maintaining attendance and completing a workday. (Pl.'s Mem. at 8-9.)

As noted above, after discussing Dr. Cousins' report, the ALJ found some of Dr. Cousins' opinions inconsistent or unsupported by the evidence in the record. The ALJ cited to Plaintiff's normal mental status evaluations (R. at 990, 1000, 1004, 1009, 1014, 1019, 1024, 1030, 1091, 1093, 1095-97), that she was observed to be pleasant and cooperative (R. at 1091, 1093, 1095), was capable of spelling "world" backwards, and could help her son with homework (R. at 51, 1095, 1097). (R. at 19.) During her examination with Dr. Cousins, Plaintiff was cooperative, answered the questions asked by Dr. Cousins, and had good eye contact. (R. at 335-36.) Finally, the ALJ cited to Plaintiff's "sad, tearful, anxious, and fearful" demeanor (R. at 20, 975), and accordingly limited Plaintiff to work in a static work environment without tandem work

14

assignments (R. at 15). The evidence the ALJ cited is the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion and is therefore supported by substantial evidence.

Contrary to Plaintiff's contention, the ALJ is not required to "refute" Dr. Cousins' opinion. Rather, an ALJ must evaluate—like the ALJ in this case did—the persuasiveness of the opinion by examining the supportability and consistency of the opinion with other evidence in the record. Plaintiff's argument that the ALJ's citation to Plaintiff's normal mental status examinations and her pleasant and cooperative nature are "superficial" and "meaningless" is similarly without merit. (Pl.'s Mem. at 9.) Plaintiff may disagree with the ALJ's evaluation of the mental status examinations and other evidence in the record, but the fact that the evidence may support an opposite conclusion is not grounds for reversal. *Dunn*, 607 F. App'x at 274 (quoting *Clarke*, 843 F.2d at 272-73) ("An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision."). Accordingly, substantial evidence supports the ALJ's consideration of Dr. Cousins' medical opinion.

**D.  The ALJ Did Not Err by Failing to Consider Dr. Houchin's Medical Opinion.**

Plaintiff argues that the ALJ erred by not considering the opinion of Dr. Houchin. (Pl.'s Mem. at 10-11.) Defendant argues that the ALJ had no obligation to consider Dr. Houchin's medical evaluation because the evaluation was not a "medical opinion" that the ALJ was required to consider. (Def.'s Mem. at 28-30.)

Under the Social Security Administration regulations, the ALJ must consider each medical opinion in the record. § 416.920c ("[W]hen a medical source provides multiple medical opinion(s) . . . we will articulate how we considered the medical opinions . . . from that medical source

15

together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate."). The regulations define a medical opinion as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the [following] abilities . . .
>
> (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R § 416.913(a)(2).

According to Plaintiff, Dr. Houchin sets forth a single "medical opinion" in one sentence of his twenty-two-page report: that Plaintiff is "likely to be often plagued by worry to the degree that her ability to concentrate and attend are significantly compromised." (R. at 406.) Although Dr. Houchin's report was written with the stated purpose of "clarification of diagnostic impressions, differential diagnosis evaluation, and for assistance with treatment planning" (R. at 399), Plaintiff argues that the sentence presents a "medical opinion" about whether Plaintiff has an impairment that limits her ability to perform mental demands of work activities. (Pl.'s Mem. at 10-11.)

Upon review of Dr. Houchin's report, the Court finds that Dr. Houchin's report does not contain a medical opinion requiring consideration by the ALJ for two reasons. First, Dr. Houchin

was not evaluating Plaintiff to determine her *work-related* functional impairments. Rather, the purpose of Dr. Houchin's report to perform a "comprehensive psychological evaluation for clarification of diagnostic impressions, differential diagnosis evaluation, and for assistance with treatment planning." (R. at 399.) Dr. Houchin performed several assessments including a mental status examination, a review of Plaintiff's medical records, a Test of General Reasoning Ability, a Personality Assessment Inventory, a Behavior Rating Inventory of Executive Functioning, and a Sentence Completion Test. (R. at 402.) Based on his assessments, Dr. Houchin recommended the best treatment options for Plaintiff. (R. at 409.) Given the purposes of the report, Dr. Houchin's opinion should not be interpreted as relating to limitations in a work setting.

Second, Dr. Houchin's single, generalized comment did not expressly relate to Plaintiff's ability to concentrate or attend *in a work setting*. (*See* R. at 399-420.) Further, Dr. Houchin did not address whether Plaintiff's ability to concentrate was related to an impairment, but appears instead to be only an observation, noting that "[Plaintiff] indicates that she is experiencing a discomforting level of anxiety and tension." (R. at 406.) The absence of any language in Dr. Houchin's opinion that the opinion relates to Plaintiff's ability to concentrate or attend in a work setting, or relates to an impairment, further supports the conclusion that the opinion was not a "medical opinion." Having concluded that Dr. Houchin did not provide a medical opinion, the Court similarly concludes that the ALJ was under no obligation to evaluate his report in the written decision.

### E.  The ALJ Properly Evaluated Plaintiff's Subjective Complaints of Pain.

Plaintiff argues that the ALJ failed to apply the correct legal standards outlined in *Craig v. Chater* to evaluate Plaintiff's subjective complaints of pain. (Pl.'s Mem. at 11-14.) In response, Defendant argues that the ALJ properly applied the two-prong subjective complaint analysis. (Def.'s Mem. at 30-34.)

When evaluating a claimant's subjective complaints of pain in the context of a residual functional capacity determination, the ALJ must follow a two-prong analysis. § 416.929(a); *Craig*, 76 F.3d at 594; *see also* SSR 96-7p, 1996 WL 374186 (July 2, 1996). The first prong of the *Craig* analysis requires the ALJ to determine the existence of an underlying medically determinable physical or mental impairment or impairments that could reasonably produce the claimant's alleged pain or other symptoms. § 416.929(b); *Craig*, 76 F.3d at 594. This threshold determination requires a showing, by objective evidence, "of the existence of a medical impairment 'which could be reasonably expected to produce' the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 594. Only after this threshold determination may the ALJ proceed to the second prong and evaluate the intensity and persistence of those symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. *Id.* at 595. The second prong requires the ALJ to consider whether Plaintiff's subjective complaints could "reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* at 596; § 416.929(c)(4).

### 1. The ALJ Did Not Err at the First Prong.

First, Plaintiff argues that the ALJ erred at the first prong by finding that "the claimant's impairments could reasonably be expected to cause *some* of the alleged symptoms[.]" (R. at 16 (emphasis added).) Plaintiff contends that the use of the word "some" does not answer the question asked by *Craig* at prong one—whether Plaintiff has "a medically determinable impairment which could reasonably be expected to cause not just pain, or some, pain, or pain of some kind or severity, but the pain the claimant alleges she suffers." *Craig*, 73 F.3d at 594.

Here, the ALJ satisfied the first prong of the *Craig* analysis because the ALJ found the existence of a medical impairment and continued her analysis to the second prong of the inquiry.

*See Powell v. Colvin*, No. 3:16-cv-56 (REP), 2016 WL 6562071, at *5-6 (E.D. Va. Oct. 14, 2016) (finding no error at step one where the ALJ found the existence of a medical impairment and progressed to the second prong). Despite Plaintiff's contention, this Court has repeatedly held that an ALJ does not err in a *Craig* analysis by finding that the claimant's impairments could cause *some* of the alleged symptoms at the first prong. *See Thomas v. Saul*, No. 3:18-cv-700 (JAG), 2019 WL 3801850, at *13 (E.D. Va. July 25, 2019) (finding ALJ does not err at prong one of *Craig* analysis by using word "some" and citing cases where courts have held the same), *report and recommendation adopted*, 2019 WL 3779515 (E.D. Va. Aug. 12, 2019); *Wanda H. v. Saul*, No. 3:19-cv-001 (DJN), 2019 WL 6709387, at *6 (E.D. Va. Dec. 9, 2019) (same). In *Thomas v. Saul*, the Court explained that, when an ALJ finds that Plaintiff's medically determinable impairments could reasonably be expected to produce only some of Plaintiff's symptoms, the ALJ "merely rejected some of the symptoms alleged by Plaintiff while accepting others," and such a finding comports with the Fourth Circuit's decision in *Craig*. 2019 WL 3801850, at *13. Accordingly, the ALJ properly evaluated Plaintiff's subjective complaints at the first prong of the *Craig* analysis.

### 2. The ALJ Did Not Err at the Second Prong.

Plaintiff also argues that the ALJ erred at the second prong of the *Craig* analysis by finding that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (R. at 16 (Pl.'s Mem. at 12-13).) Plaintiff contends that the ALJ's conclusion that Plaintiff's complaints were "not entirely consistent" with the evidence in the record imposes a higher burden of proof than the regulations, which require the ALJ to consider whether Plaintiff's complaints can "reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (Pl.'s Mem. at 13-15.)

19

The Court finds that the ALJ did not impose a burden higher than the regulations. After stating her residual functional capacity determination, the ALJ noted "I have considered all symptoms and the extent to which these symptoms can *reasonably be accepted as consistent with the objective medical evidence and other evidence*, based on the requirements of 20 C.F.R. 416.929 and SSR 16-3p." (R. at 16 (emphasis added).) Accordingly, the ALJ used the proper legal standard in her evaluation of Plaintiff's subjective complaints of pain.

Moreover, this Court has previously found that an ALJ does not err by finding a plaintiff's subjective complaints of pain are "not entirely consistent" with record, so long as the ALJ continues with the step two analysis and explains that the objective evidence in the record undermines Plaintiff's subjective statements regarding the intensity of pain. *See Chandler v. Berryhill*, No. 1:17cv1346 (CMH/JFA), 2018 WL 4346703, at *11-12 (E.D. Va. July 26, 2018). Here, the ALJ appropriately analyzed Plaintiff's statements about her subjective complaints, the medical evidence from Plaintiff's physical and mental examinations, and the medical opinion evidence. The ALJ cited Plaintiff's testimony that she "had not been in an actual fight since she was a teenager, she may skip a day of showering but is otherwise able to shower and dress herself, and that she cooked, cleaned, washed dished, did her own laundry, and that she helps her son with schoolwork and got him ready for school." (R. at 17.) The ALJ then evaluated the medical evidence, which demonstrated largely normal findings that were inconsistent with Plaintiff's complaints of pain. (R. at 17.) Therefore, the ALJ applied the proper legal standard and her evaluation of Plaintiff's subjective complaints of pain is supported by substantial evidence.

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 13) be DENIED, that Defendant's Motion for Summary Judgment

(ECF No. 18) be GRANTED and the final decision of the Commissioner of Social Security be AFFIRMED.

Let the Clerk file a copy of this Report and Recommendation electronically, notify all counsel of record and forward a copy to United States District Judge John A. Gibney, Jr.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/

Elizabeth W. Hanes
United States Magistrate Judge

Richmond, Virginia
Date: January 19, 2021

21